Dr. John R. BRISCOE, Appellant,

v.

Edward J. BOCK et al., Trustees of Deaconess Hospital, and the Evangelical Deaconess Society of St. Louis, d/b/a Deaconess Hospital, Appellees.

No. 76–1055.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1976.

Decided Aug. 19, 1976.

Robert E. Staed, St. Louis, Mo., argued on brief, for appellant.

Albert A. Michenfelder, J. William Newbold, Clayton, Mo., on brief, for appellees.

Cullen Coil, Jefferson City, Mo., on brief, for amici curiae Missouri Hospital Ass'n.

Edward W. Sumner, Jr., and James L. Nouss, Sumner, Hanlon, Sumner, MacDonald & Nouss, Clayton, Mo., for amici curiae Hospital Assn. of Metropolitan St. Louis.

Before HEANEY and HENLEY, Circuit Judges, and SCHATZ, District Judge.*

HENLEY, Circuit Judge.

Dr. John R. Briscoe of St. Louis, Missouri plaintiff below and appellant here, brought this action against the members of the Board of Trustees of Deaconess Hospital in St. Louis and the Hospital itself alleging that in 1974 he had been terminated as a member of the staff of the Hospital in violation of rights secured to him by the Constitution of the United States and in violation of alleged private contractual rights.

The suit was filed initially in the Circuit Court of the City of St. Louis and was removed by the defendants to the United States District Court for the Eastern District of Missouri. Thereafter plaintiff filed an amended complaint in two counts. In the first count plaintiff alleged that his dismissal from the staff of the Hospital without prior notice and hearing deprived him of due process of law guaranteed by the fourteenth amendment to the Constitution of the United States; jurisdiction of that court was predicated upon 42 U.S.C. §§ 1983 and 1985(3) read in connection with 28 U.S.C. § 1343(3). The second count embraced plaintiff's claim of breach of contract, and with respect to that count plaintiff invoked the pendent jurisdiction of the district court, there being no diversity of citizenship between the parties.[1] Plaintiff sought reinstatement in his staff position and damages.

Thereafter the defendants filed a motion to dismiss Count 1 of the complaint for lack of jurisdiction and moved for summary judgment with respect to Count 2. On December 8, 1975 the district court[2] filed a memorandum and order dismissing the entire complaint for lack of jurisdiction. This appeal followed. We affirm.

■ It is clear that the district court had no jurisdiction under 42 U.S.C. § 1985(3) which is geared to the equal protection clause of the fourteenth amendment rather than to the due process clause. *Klinge v. Lutheran Charities Ass'n of St. Louis,* 523 F.2d 56, 60, n. 2 (8th Cir. 1975); *Jackson v.*

---

* ALBERT G. SCHATZ, District Judge, District of Nebraska, sitting by designation.

1. After the case was removed from the Circuit Court and the amended complaint was filed, the parties and the district court appear to have treated the litigation as though it had been commenced in the district court originally as a civil rights action with jurisdiction being based on the federal statutes above mentioned.

2. The Honorable John F. Nangle, United States District Judge.

*Norton-Children's Hospitals, Inc.,* 487 F.2d 502, 503 (6th Cir. 1973), *cert. denied,* 416 U.S. 1000, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974).

■ The question of whether the district court had jurisdiction of the case under 42 U.S.C. § 1983 depends upon whether the action of the Trustees of the Hospital in terminating the staff status of plaintiff was "state action" or whether it was purely private action. If it was the latter, then § 1983 affords no basis for federal jurisdiction. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349–50, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *see also Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). And, of course, if the district court had no jurisdiction with respect to the federal claim asserted by plaintiff, it had no jurisdiction of the pendent claim based on breach of contract. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 721–29, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); 13 Wright, Miller & Cooper, Federal Practice & Procedure, § 3567, pp. 443–45.

The record reflects that plaintiff is a general practitioner who was licensed to practice medicine in Missouri in 1937. In 1939 he became a member of the staff of the Hospital and remained a member continuously, save for a period of time spent in military service, until October, 1974 when he was notified by letter that his staff membership with all attendant privileges was being terminated. The letter did not advise plaintiff of the reason for his termination but did advise him that he was entitled to an administrative hearing, and that if he requested such a hearing he would learn in the course of it why he was being dismissed.

Plaintiff initially requested a hearing but was unwilling to agree to certain of the terms imposed by the Hospital's rules and regulations. He later withdrew his request for a hearing and commenced this litigation.

Plaintiff contends that the action of the Hospital in terminating him amounted to state action, and that it deprived him of at least procedural due process of law so that the district court had § 1983 jurisdiction.

It is undisputed that Deaconess Hospital is one of many private hospitals operating in and around St. Louis; it is a Missouri nonprofit corporation; it is tax exempt; it is subject to extensive state regulation as are all private hospitals in the state. Over a period of years it has received substantial sums of money disbursed by Missouri under the provisions of the Hill-Burton Act of 1946, as amended, 42 U.S.C. §§ 291, *et seq.*; it has also received moneys under the federal Medicare and Medicaid Programs and under the Missouri Regional Medical Program. It also appears that during 1974 the Hospital was a member of the Alliance for Regional Community Health (ARCH) which was a Comprehensive Health Planning Agency authorized by Public Law 89–749, 80 Stat. 1180. ARCH seems to have been financed by federal and state funds and by contributions from the United Fund of Greater St. Louis.

The district court agreed with the defendants that in spite of the relationships between the Hospital and the state and federal governments that have been described, the action of the Hospital in dismissing plaintiff from the staff was private and not state action and that subject matter jurisdiction did not exist. Alternatively, the district court held that even if it had jurisdiction, plaintiff waived his right to complain of any constitutional deprivation when he withdrew his request for a hearing as provided by the Hospital's rules.

Since we agree with the district court in its basic holding, we do not reach the question of waiver.

■ There is no question that when those in charge of the affairs of a public hospital deal with staff members, patients or would-be patients, the dealings must conform to the requirements and prohibitions of the fourteenth amendment. And, if the authorities of a public hospital, acting under color of law, deprive a person of a federally

protected right, he may seek redress under § 1983. *Doe v. Poelker,* 515 F.2d 541 (8th Cir. 1975), *cert. granted,* —— U.S. ——, 96 S.Ct. 3220, 49 L.Ed.2d —— (1976); *Woodbury v. McKinnon,* 447 F.2d 839 (5th Cir. 1971). We are dealing, however, with a private hospital.

In *Simkins v. Moses H. Cone Memorial Hospital,* 323 F.2d 959 (4th Cir. 1963), *cert. denied,* 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964), it was held that the fact that private hospitals in North Carolina had received Hill-Burton funds was sufficient to give the federal courts § 1983 jurisdiction of a suit brought by Negro physicians for the purpose of ending racial discrimination that was being practiced in the hospitals. The Fourth Circuit has consistently followed that holding and has extended it to cases not involving racial or similar types of discrimination. *Doe v. Charleston Area Medical Center,* 529 F.2d 638 (4th Cir. 1975); *Duffield v. Charleston Area Medical Center,* 503 F.2d 512 (4th Cir. 1974); *Christhilf v. Annapolis Emergency Hospital Ass'n,* 496 F.2d 174 (4th Cir. 1974); *Sams v. Ohio Valley General Hospital Ass'n,* 413 F.2d 826 (4th Cir. 1969). As will be seen, other circuits have come to the opposite conclusion.

The question first came before this court in *Stanturf v. Sipes,* 335 F.2d 224 (8th Cir. 1964), *cert. denied,* 379 U.S. 977, 85 S.Ct. 676, 13 L.Ed.2d 567 (1965), shortly after *Simkins, supra,* had been decided. We questioned the holding in *Simkins* but were willing to accept it arguendo and for purposes of the opinion in the case under consideration. 335 F.2d at 226–27.

In *Klinge v. Lutheran Charities Ass'n, supra,* no claim was made that the action of the hospital in dismissing the plaintiff physician was not state action. In view of that fact and of the fact that the district court had dismissed plaintiff's claim on the merits, we let the jurisdictional question pass.

We think that we should now decide the question definitively.

We recognize at the outset that the relationship between a private corporation and a state or local government may be such or the function performed by the corporation

may be such that actions taken by the corporation may be governmental rather than private actions. *See, e. g., Burton v. Wilmington Housing Authority, supra.* And we also recognize that the "question whether particular conduct is 'private,' on the one hand, or 'state action,' on the other, frequently admits of no easy answer. . ." *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 349–50, 95 S.Ct. at 453.

■ *Jackson* makes it clear, however, that an action taken by a private corporation is not necessarily or automatically "state action" merely because the corporation is chartered by the state, or because the corporation has a state conferred monopoly, or because the activities of the corporation are strictly regulated by the state, or because the functions performed by the corporation serve the public convenience and necessity. Before the action in question can properly be characterized as "state action", there must be a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." 419 U.S. at 351, 95 S.Ct. at 453.

In that case the plaintiff had brought a § 1983 suit in federal court in Pennsylvania alleging that she had been denied due process of law when the defendant utility cut off her electric power for nonpayment of bills without giving her prior notice or hearing or an opportunity to make good her arrearages. The district court determined that it had no jurisdiction, and the Court of Appeals for the Third Circuit agreed. A majority of the Supreme Court likewise agreed. The majority concluded that "the State of Pennsylvania is not sufficiently connected with respondent's action in terminating petitioner's service so as to make respondent's conduct in so doing attributable to the State for purposes of the Fourteenth Amendment." 419 U.S. at 358–59, 95 S.Ct. at 457.

■ In the instant case there is nothing to indicate that there was any connection between plaintiff's dismissal from the staff

of the Hospital and the fact that the Hospital had received Hill-Burton or other public funds, or the fact that the Hospital has a tax exempt status or the fact that the Hospital was subject to state regulation, or the fact that in 1974 the Hospital was an active member of ARCH. Hence, there is no such nexus between the state's relationship to the Hospital's operation and the dismissal of the plaintiff as to justify attribution of the challenged action of the Hospital to the state.

The view that we take accords with that taken by sister circuits, other than the Fourth, in cases decided both before and after *Jackson, supra. Taylor v. St. Vincent's Hospital,* 523 F.2d 75 (9th Cir. 1975), *cert. denied,* 424 U.S. 948, 96 S.Ct. 1420, 47 L.Ed.2d 355 (1976); *Watkins v. Mercy Medical Center,* 520 F.2d 894 (9th Cir. 1975); *Greco v. Orange Memorial Hospital Corp.,* 513 F.2d 873 (5th Cir.), *cert. denied,* 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975); *Ascherman v. Presbyterian Hospital of Pacific Medical Center, Inc.,* 507 F.2d 1103 (9th Cir. 1974); *Chrisman v. Sisters of St. Joseph of Peace,* 506 F.2d 308 (9th Cir. 1974); *Jackson v. Norton-Children's Hospital, supra* ; *Doe v. Bellin Memorial Hospital,* 479 F.2d 756 (7th Cir. 1973); *Ward v. St. Anthony Hospital,* 476 F.2d 671 (10th Cir. 1973).[3]

As indicated, the judgment of the district court will be affirmed.

---

**3.** We note that in *Stanturf v. Sipes, supra,* this court in discussing *Simkins v. Moses H. Cone Memorial Hospital, supra,* emphasized the fact that the *Simkins* case involved racial discrimination. 335 F.2d at 226. And we also note that in *Greco, supra,* 513 F.2d at 879, the court said:

> The doctrine of state action developed primarily in the area of racial discrimination. . . . . The concepts developed in this area, explicitly supported by constitutional and legislative mandates, were necessarily broadly drawn in order to implement Congressional intent in circumstances of positive and frequent state obfuscation and delay.

Like *Greco* the instant case does not involve alleged racial discrimination.