Ella ARMSTRONG, the South Central Minnesota Senior Federation, and Fairmont Hospital Medicare and Medical Assistance Certification Coalition, Plaintiffs,

v.

FAIRMONT COMMUNITY HOSPITAL ASSOCIATION, INC., City of Fairmont, and Gerry Gilbertson in his official capacity as Administrator of Fairmont Community Hospital Association, Inc., Defendants.

Civ. No. 4–86–416.

United States District Court,
D. Minnesota,
Fourth Division.

July 22, 1987.

Maureen O'Connell, Southern Minnesota Regional Legal Services, Mankato, Minn., and Michael Hagedorn, St. Paul, Minn., for plaintiffs.

John E. Diehl, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiffs' motion for attorneys' fees pursuant to 42 U.S.C. § 1988. Plaintiffs' motion will be granted.

FACTS

On May 13, 1987, the Court entered judgment granting plaintiffs' motion for summary judgment. Plaintiffs had filed suit seeking a Court order requiring defendants to comply with the community service as-

surance provisions of the Hill–Burton Act by participating in the Medicaid program and accepting Medicaid patients in the Fairmont Community Hospital's nursing care unit, known as the Lutz Wing. The Court found that the defendants had in fact received funds under the Hill–Burton Act, 42 U.S.C. § 291 *et seq.*, to construct a general hospital and nursing care unit and, pursuant to the requirements of the Act, gave assurance that the facility would provide a community service. The Court further found that the community service assurance, pursuant to 42 U.S.C. § 291c(e) and 42 C.F.R. § 124.603(c), requires participation in the Medicaid program. Therefore, the Court ordered that the defendants are required to obtain and maintain proper certification with the Minnesota Department of Health and a provider agreement with the Minnesota Department of Human Services for participation in the Medicaid program, and to accept Medicaid patients who are suitable for convalescent and nursing home treatment in the Lutz Wing until proper application to, and further order of, the Court. Memorandum and Order, 659 F.Supp. 1524 (D.Minn.1987).

Plaintiffs now move for a Court order of attorneys' fees in the amount of $39,907.75 and costs in the amount of $60.00 against defendants, pursuant to 42 U.S.C. § 1988. Defendants oppose this motion on the grounds that 42 U.S.C. § 1988 does not apply to this case and that the fees requested by plaintiffs are excessive.

DISCUSSION

Plaintiffs seek attorneys' fees under 42 U.S.C. § 1988, which provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. *In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.*

42 U.S.C. § 1988 (emphasis added). There is no question in this case that plaintiffs are the "prevailing party" in this action. *See* Memorandum and Order, 659 F.Supp. 1524 (D.Minn.1987) (granting plaintiffs' motion for summary judgment). There is a question, however, as to whether this action may be properly characterized, as plaintiffs argue, as an action under 42 U.S.C. § 1983, and is therefore subject to the attorneys' fees provision of 42 U.S.C. § 1988.

Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. It is undisputed that plaintiffs never directly asserted a cause of action against defendants, either in the complaint or any subsequent pleadings in which reference was made to 42 U.S.C. § 1983. Plaintiffs argue, however, that

this action was in the nature of a section 1983 action, and therefore an award of attorneys' fees under 42 U.S.C. § 1988 is appropriate.

■ The law is clear that section 1988 applies to all *types* of section 1983 actions, whether or not the action is literally based on section 1983. For example, in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1979), the Supreme Court held that an action based solely on violations of the Social Security Act could be characterized as a section 1983 action, since it sought to enforce the civil rights, privileges or immunities of persons which had been denied under color of state law, and therefore attorneys' fees could be awarded under 42 U.S.C. § 1988. *See also Maher v. Gage*, 448 U.S. 122, 128–29, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1979) (holding that neither the language of section 1988 nor its legislative history provides for distinctions among section 1983–type actions for purposes of awarding attorneys' fees). In the case at bar, although the specific statute, 42 U.S.C. § 1983, was never directly cited by plaintiffs in their complaint or subsequent pleadings, the complaint clearly alleged a 42 U.S.C. § 1983–type violation. The complaint charged the following:

### CLAIM

By refusing and failing to make the services and facilities of the nursing home unit of the Fairmont Community Hospital available to plaintiff Armstrong and other Medicaid eligible individuals in the community served by the nursing care unit, the defendants have violated their obligation to plaintiffs under 42 U.S.C. § 291c(e), 42 C.F.R. § 124.603, and the Minnesota State Plan for Hospitals, Public Health Centers and Related Medical facilities.

Defendant, City of Fairmont, in failing to comply, and to ensure compliance of defendant Fairmont Community Hospital Association with the community services assurances given in the application it submitted on behalf of defendant Hospital Association, *has acted and failed to act under color of state law in violation of plaintiffs' federal statutory and regulatory rights.*

Complaint, par. 55, 56 (emphasis added). Moreover, in the plaintiffs' Prayer for Relief, they specifically asked for attorneys' fees "under 42 U.S.C. § 1988...." Complaint, Prayer for Relief, par. 5.

Additionally, the Court asserted jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3). Section 1343(a)(3) provides that the district courts shall have original jurisdiction of any civil action commenced by any person to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the United States or any Act of Congress providing for equal rights of persons. The Court's assertion of jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) supports the conclusion that plaintiffs have stated a valid cause of action under 42 U.S.C. § 1983, although the Court notes that the mere assertion of jurisdiction under 28 U.S.C. § 1343(a)(3) does not create a cause of action under 42 U.S.C. § 1983, because section 1983 itself is only a remedy for a substantive constitutional or civil rights violation committed under color of state law. *See, e.g., Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 615–20, 99 S.Ct. 1905, 1914–17, 60 L.Ed.2d 508 (1978); *see also Maher*, 448 U.S. at 129 n. 11, 100 S.Ct. at 2574 n. 11 (discussing *Chapman* and 28 U.S.C. § 1343). Thus, in order for the plaintiffs to prevail on their motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988, plaintiffs must prove the substantive elements of a section 1983 claim. Namely, plaintiffs must prove that they were deprived of rights, privileges or immunities secured by the Constitution or federal laws, by a governmental entity acting under color of state law. *See* 42 U.S.C. § 1983; *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).[1]

---

1. In *Gomez* the Supreme Court held that in a section 1983 action brought against a public official whose position might entitle him to immunity if he acted in good faith, the plaintiff

As a preliminary matter, defendants argue that this action cannot be characterized as a section 1983 action because had the plaintiffs based their claims on section 1983, their cause of action would have been barred by the statute of limitations. However, the Court finds that this action was brought within the applicable statute of limitations for a section 1983 action, which is two years. *See, Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Cook v. City of Minneapolis*, 617 F.Supp. 461 (D.Minn.1985). This action was commenced on May 16, 1986. The individual named plaintiff, Ella Armstrong, did not become eligible for Medicaid and thereby affected by defendants' actions, until January, 1986. *See*, Complaint, Exh. P and N, and Peterson Affidavit par. 9, 10. Plaintiff community groups, the South Central Minnesota Senior Federation and the Fairmont Hospital Medicare and Medical Assistance Certification Coalition, consist of members who were subject to ongoing deprivations of their rights by defendants, extending into the two-year statutory limitations period preceding the commencement of this action. Therefore, none of the plaintiffs' claims would have been barred by the two-year statute of limitations had their claims been brought under section 1983.

As for the substance of plaintiffs' claims, it is clear that plaintiffs have proven the first prong of a section 1983 action, *i.e.* that they were deprived of rights and entitlements guaranteed by federal law. The Court found that defendants were in violation of 42 U.S.C. § 291c(e) and 42 C.F.R. § 124.603(c), since defendants had not complied with their community service obligation to participate in the Medicaid program for nursing home care patients in the Lutz Wing. *See, e.g., Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1979). However, plaintiffs must also prove that this deprivation of rights guaranteed by federal law was committed by a governmental entity, acting under color of state or municipal law, which is the second essential prong of a section 1983 claim.

The City of Fairmont was a named defendant in this action, and it is clear that when a governmental entity and private entities are joint participants or act together to violate plaintiffs' rights, such a violation may constitute a violation under color of state law. *See, e.g., Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Lugar v. Edmondson Oil Company, Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Thus, the mere fact that two of the defendants, Fairmont Community Hospital Association and Gerry Gilbertson, were private parties does not in and of itself prove that the acts complained of were not committed by a governmental entity. However, plaintiffs still bear the burden of proving that the defendants acted under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

As previously discussed, in order to prove a deprivation of rights actionable under section 1983, plaintiffs must prove that the deprivation occurred under color of state statute, ordinance, regulation, custom or usage. *See* 42 U.S.C. § 1983. While a private entity acting as a joint participant with a governmental entity to violate a plaintiff's rights may be committing a violation under color of state law, *see, e.g., Burton*, 365 U.S. 715, 81 S.Ct. 856; *Lugar*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), an action taken by a private entity is not necessarily or automatically "state action" merely because the entity is chartered by the state, or because the activities of the entity are strictly regulated by the state, or because the functions performed by the entity serve the public convenience and necessity. Before the action in question can be characterized as "state action,"

---

need not allege bad faith to state a claim for relief. The Supreme Court stated:

> By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

*Gomez,* 446 U.S. at 640, 100 S.Ct. at 1923.

there must be a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), *quoted in Briscoe v. Bock*, 540 F.2d 392, 395 (8th Cir.1976). Of course, the requirement that there be some "state action" is met where a municipality acts to deprive a person of some constitutional or federal rights. *See, e.g., Monnell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Additionally, a municipality's failure or omission to act which results in deprivation of federal or constitutional rights may be the basis for liability under 42 U.S.C. § 1983. *See, e.g., City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (municipality failed to properly train police officers in the handling of certain situations resulting in deprivation of constitutional rights).

In the case at bar, plaintiffs argue that they were deprived of their rights under federal law, specifically the Hill–Burton Act, 42 U.S.C. § 291c(e) and 42 C.F.R. § 124.603(c), under color of municipal action. Plaintiffs argue that the City of Fairmont was legally responsible for ensuring the Fairmont Community Hospital's compliance with Hill–Burton law, and that the City's continuous failure to ensure such compliance violated section 1983. The Court agrees.

The City of Fairmont was the named legal applicant for Hill–Burton funding from the federal government, on behalf of the named facility, Fairmont Community Hospital. *See* Plaintiffs' Motion for Summary Judgment, Exh. I. The application was signed by the mayor of the City of Fairmont on behalf of the City. *Id.* The application for Hill–Burton funding, which was accepted, making its terms binding upon the parties, clearly states that as a condition of receiving funding—

That the *facility* will furnish a community service. . . .

*Id.* at par. P (emphasis added). The application further states that the *applicant*—

... HEREBY GIVES ASSURANCE THAT it will immediately take any measures necessary to effectuate this agreement.

*Id.* at par. S. Thus the City contractually obligated itself to ensure that the Hospital would comply with Hill–Burton obligations. In essence, the City and the Hospital acted and agreed jointly to comply with and ensure compliance with the Hill–Burton Act and other federal laws in return for federal Hill–Burton money. The benefits of the contract enured to both the City and the Hospital, as did the obligation and responsibility to assure compliance with federal laws under the terms of the Hill–Burton application and law. Therefore, there was a sufficiently close nexus between the City and the challenged action of the Hospital (*i.e.*, the Hospital's failure to participate in the Medicaid Program for the Lutz Wing) so that the action of the latter can fairly be treated as the action or failure to act of the City itself. *See, e.g., Jackson*, 419 U.S. at 351, 95 S.Ct. at 453–54; *Briscoe*, 540 F.2d at 395. All of the defendants were involved in depriving plaintiffs of federal statutory rights and entitlements. This deprivation could not have occurred if each and every one of the defendants, including the defendant City, had not violated its obligations and assurances to enforce and abide by the community service provisions of federal Hill–Burton law. Moreover, the City's failure to meet its legal obligation to ensure Hospital compliance with Hill–Burton law constituted a separate and independent violation of 42 U.S.C. § 1983. *See, e.g., Tuttle*, 471 U.S. at 808, 105 S.Ct. at 2427.

In sum, the Court finds that plaintiffs' claims stated a cause of action under section 1983, and that plaintiffs proved that they were in fact deprived of federal rights by a governmental entity under color of state law. Therefore, since plaintiffs could have brought their claims with specific reference to section 1983 and prevailed on those claims under section 1983, attorneys' fees may be awarded under 42 U.S.C. § 1988. *See Thiboutot*, 448 U.S. 1, 100

S.Ct. 2502, 65 L.Ed.2d 555; *Gage*, 478 U.S. at 128–29, 100 S.Ct. at 2574.

■ The remaining issue before the Court therefore, is the amount of attorneys' fees to be awarded. Plaintiffs have submitted affidavits and memoranda in support of their motion for attorneys' fees. Defendants have argued that the amounts requested by plaintiffs should not be fully granted. The Court has carefully examined the documentation before it and has considered the arguments of counsel on this issue. The Court finds that plaintiffs' litigation support counsel, Michael Hagedorn, worked a total of 168.75 compensable hours on this case. The Court has concluded that an award of $100.00 per hour is reasonable in light of Attorney Hagedorn's experience and years of practice. The Court further finds that plaintiffs' supervising attorney, Lawrence Nicol, worked a total of 94.90 compensable hours on this case, and that an award of $80.00 per hour is reasonable in light of Attorney Nicol's experience and years of practice. The Court also finds that plaintiffs' lead attorney since December, 1985, Maureen O'Connell, who took over this case from Attorney Nicol, worked a total of 207.25 compensable hours on this case, and that an award of $60.00 an hour is reasonable in light of Attorney O'Connell's experience and years of practice. Therefore, the Court will order defendants to pay plaintiffs' counsel, Southern Minnesota Regional Legal Services, Inc., $16,875.00 for the services of Attorney Hagedorn; $7,592.00 for the services of Attorney Nicol; and $12,435.00 for the services of Attorney O'Connell, for a total award of attorneys' fees in the amount of $36,902.00.

Based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that defendants pay plaintiffs' counsel, Southern Minnesota Regional Legal Services, Inc., a total of $36,902.00 in attorneys' fees pursuant to 42 U.S.C. § 1988.

IT IS FURTHER ORDERED that defendants must also pay plaintiffs' counsel, Southern Minnesota Regional Legal Servic-es, Inc., a total of $60.00 in costs, pursuant to 42 U.S.C. § 1988.

LET JUDGMENT BE ENTERED ACCORDINGLY.